[No. E008605. Fourth Dist., Div. Two. June 24, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRETT BROOKE LITTLETON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, IV and V.

**COUNSEL**

Kimberly J. Grove, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, J.**—Defendant was charged with and convicted of one count of forcible oral copulation (Pen. Code,[1] § 288a, subd. (c)), two counts of forcible rape (§ 261, subd. (a)(2)), and one count of residential burglary (§§ 459/460). The jury also found that defendant used a knife in connection with each of the substantive offenses within the meaning of sections 12022.3 and 12022, subdivision (b). In a bifurcated proceeding following the jury's verdict, the trial court found true two prior serious felony convictions within the meaning of section 667, subdivision (a) and two prior convictions alleged pursuant to section 667.6, subdivision (a).

Defendant appeals, contending the court: (1) erred in admitting evidence of DNA analysis; (2) erred in denying a defense motion for discovery; (3) erred in precluding expert testimony regarding the dynamics of eyewitness identification; and (4) erred in rejecting defendant's proposed instructions on eyewitness identification. We find no error and therefore affirm.

I

FACTS

During the early morning hours of September 14, 1988, Lisa Z. was awakened by an intruder who had entered her bedroom and positioned himself on top of her. He threatened to kill her and told her he had a knife. She felt a sharp object scrape the back of her neck.

Defendant made Ms. Z. orally copulate him and raped her twice. He told her he had been out partying with friends and had watched her before entering her apartment. Throughout most of the time, Ms. Z. kept her eyes closed but after defendant told her that he wanted to have a relationship with her, he forced her eyes open so that she would recognize him when he returned.

Defendant was in Ms. Z.'s apartment for a total of three or four hours. When he left the bedroom to return the knife to the kitchen, Ms. Z. locked herself in the bathroom and stayed there until defendant left.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

Ms. Z. described her assailant as a White male, 40-45 years old, weighing between 175 and 180 pounds. He had wavy light brown hair, deep blue eyes, a missing upper front tooth,[2] no facial hair and smelled of cigarette smoke. She identified defendant as the assailant first in a photo lineup and in a subsequent live lineup.

It was also determined that the Phosphoglucomutase typing from deep and shallow vaginal swabs taken from Ms. Z. and from stains on the bed comforter were identical to defendant's and different from both Ms. Z.'s and her boyfriend's.[3] The Glyoxalase type from the deep vaginal swab also matched defendant's and were different from Ms. Z.'s and her boyfriend's. A single hair recovered from Ms. Z.'s pillow was similar to defendant's.

Cellmark Diagnostics performed DNA testing on the vaginal swab and blood samples from defendant, Ms. Z. and her boyfriend. Cellmark reported a five-band match between the DNA from the semen in the vaginal swab and the defendant's DNA from his known blood sample. As a result, defendant could not be excluded as a donor of the semen found in the vaginal swab.

Defendant testified on his own behalf and presented two alibi witnesses.

## II

## ADMISSIBILITY OF DNA ANALYSIS*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## III

## DISCOVERY

 Next, defendant contends the trial court abused its discretion in denying discovery of 12 police reports involving other burglary-rape cases. The request for discovery of these reports was supported by defense counsel's declaration which indicated that there had been a series of rapes in the

---

[2]Defendant did not have a missing upper front tooth. His upper left front tooth, however, was dark brown and was slightly behind his other teeth. At the preliminary hearing, Ms. Z. testified that this was consistent with what she had observed. Defendant, with knowledge that the condition of his tooth would be an issue at trial, had corrective dental work done on the tooth before trial.

[3]Ms. Z. last had sex with her boyfriend at approximately 3:30 p.m. on September 13.

*See footnote, *ante*, page 906.

Pacific Beach area which were committed in a similar and distinctive fashion. Defendant had appeared in a lineup on September 28, 1988, before a number of victims in these crimes and was identified by only one victim. Defense counsel opined that because defendant had been a suspect in the other crimes and was not charged, the reports could produce evidence that a third party was responsible for the crime in the present case.

In opposition to the motion for discovery, the prosecutor indicated that the reports defendant sought involved ongoing police investigations in which no arrests have been made or charges brought, that release of the reports would violate privacy interests of the victims and witnesses in those cases and that the information is privileged as official governmental information under Evidence Code section 1040, subdivision (b)(2).

The trial court denied the requested discovery stating, "the Court denies the defense request for compelled discovery of the police reports involving other, at this point, to me, unrelated by evidence or even argument crimes which may have occurred, crimes in which the defendant was or may still be a suspect." The court further found that the privacy interests of the victims and citizen witnesses outweighed the defendant's request in light of the fact the court found no benefit to defendant would be obtained from the information.

■ "As a rule, a criminal defendant 'may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial.' [Citation.] But the trial court has discretion ' "to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest," ' or when there is an ' "absence of a showing which specifies the material sought and furnishes a 'plausible justification' for inspection . . . ." ' [Citation.] Although policy may favor granting liberal discovery to criminal defendants, courts may nevertheless refuse to grant discovery if the burdens placed on government and on third parties *substantially* outweigh the demonstrated need for discovery. [Citations.]" (*People* v. *Kaurish* (1990) 52 Cal.3d 648, 686 [276 Cal.Rptr. 788, 802 P.2d 278].)

■ Both in the trial court and in this court, defendant relies heavily, if not exclusively, on *City of Alhambra* v. *Superior Court* (1988) 205 Cal.App.3d 1118 [252 Cal.Rptr. 789] wherein a defendant requested and was given discovery of 12 police reports pertaining to other crimes "which bore some similarities to the crimes with which the defendant was charged." (*Id.*, at p. 1136.) In finding no abuse of discretion, the appellate court noted that "[a] minimal demonstration of plausible justification was made" (*ibid.*) and

*"no serious question has been raised that the release of this information would have violated any protected governmental interests or any third party confidentiality or privacy rights." (Id.,* at p. 1135, italics added.)

Defendant essentially contends that the *Alhambra* case is indistinguishable from the present case. We do not agree. A fact not mentioned in the majority opinion but pointed out in the concurring opinion makes the two cases distinguishable. In Justice Danielson's concurring opinion, he notes that the reports in question pertained to another criminal case involving a different defendant pending in a different department in the court. (205 Cal.App.3d at p. 1140.) Thus, unlike the present case, the reports in *Alhambra* involved crimes for which the police not only had a suspect but where another *identified* individual had been arrested and charged.[6] In the present case no one had been charged or arrested in the other crimes and they were the subject of ongoing police investigations.

Because no one had been arrested or charged with those other crimes in this case, the information in the reports would have been of no value to the defendant unless he was able to *solve* the other crimes and identify the perpetrator. Defense counsel as much as conceded this during argument on the motion. Weighed against this speculative benefit was the government's legitimate need for confidentiality of ongoing police investigations and the privacy interests of the victims and witnesses identified in those other reports. Further the only connection between the present case and the other crimes was that the police had identified defendant as a possible suspect in the other cases but had not charged him because the victims in those cases could not identify the defendant as the perpetrator. The court found this connection insufficient and the possible benefit to defendant too tenuous and speculative to outweigh both government's interest and the third parties' confidentiality and privacy interests. We find no abuse of discretion.[7]

## IV, V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

[6]The fact that the reports in *Alhambra* pertained to the pending prosecution of another defendant may explain why no serious question of government privilege or third party confidentiality or privacy rights was raised as such information was subject to disclosure through the other case.

[7]Even if we were to agree that *Alhambra* and the present case were factually indistinguishable, such agreement would not necessarily lead us to conclude that the refusal of discovery in this case was an abuse of discretion. The appellate court in *Alhambra* simply found no abuse of discretion in granting discovery. Such a conclusion does not mean a court would abuse its discretion in denying discovery under similar facts. Discretion by its very nature suggests courts reasonably can come to different conclusions.

*See footnote, *ante*, page 906.

# VI

## DISPOSITION

Judgment affirmed.

Ramirez, P. J., and Dabney, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 1992.