[No. F040888. Fifth Dist. July 7, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DEON JACKSON, Defendant and Appellant.

282

## Counsel

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stan Cross and Patrick J. Whalen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**VARTABEDIAN, Acting P. J.**—This matter is back before us after a previous remand. We found appellant Michael Deon Jackson was denied appropriate discovery hearings concerning police files of uncharged similar incidents. Directions were given to the trial court to conduct specified hearings and then rule upon the discovery requests. The trial court proceeded to find no material exculpatory evidence and reinstated the judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted appellant of numerous felonies arising from three separate residential burglaries where he sexually assaulted his victims. Numerous enhancements were found true. He was sentenced to prison for a determinate term of 17 years, a consecutive term of 50 years to life, and an additional consecutive term of 30 years to life.

Appellant contended on his initial appeal that the trial court erred when it denied him discovery of police files relating to uncharged similar burglaries, prowlings, and/or sexual assaults without first conducting an in camera review of the documents. The Attorney General's Office conceded error. We reversed, directing the trial court "to conduct the necessary in camera hearing followed by an open adversarial hearing pursuant to Evidence Code sections 915, subdivision (b), and 1040. If the trial court finds that the information contains no material, exculpatory evidence, then the court is directed to deny defendant's discovery request and reinstate the judgment." (*People v. Jackson* (Feb. 6, 2002, F037364) [nonpub. opn.].)

On remand, the trial court was presented with case files relating to similar incidents that occurred at addresses on Dunlap Street, Bloomquist Street, and Candy Lane. The court reviewed the files in camera. At the subsequent adversarial hearing on the record, the court observedthat none of the other incidents occurred on a date for which appellant had an alibi. The court found "remarkable similarities" between the modus operandi in the Dunlap Street case and appellant's crimes. The court opined that the victim's initial description of her assailant would have caused the jury to conclude that appellant committed the Dunlap Street offense; thus the file contained no exculpatory material. The Bloomquist Street case, on the other hand, occurred at the wrong time of day and did not involve entry into the house. The Bloomquist Street victim could only describe the suspect as a male of an approximate weight and height. The trial court opined that there was "no basis on which anybody could have been charged" with the crime. As for the Candy Lane incident, while it occurred at the right time of day, it involved an

attempted forced entry into the house and the court found there was "zero description of anyone, male or female, in that case."

Appellant's counsel argued that the fact that the Dunlap Street victim could not identify appellant from a photographic lineup was highly probative of the theory that someone other than appellant committed all the crimes. Appellant had a more circuitous argument as to why the Bloomquist Street and Candy Lane files should be produced.

Appellant confessed to the crimes underlying his conviction. At trial, however, he claimed the confession was coerced: prior to the taping of the interview, the interrogating officers fed him details of the crimes and he confessed in return for promises of leniency and other considerations. According to appellant, this explained the discrepancies between the confession and the facts of the crimes. The prosecution countered with testimony that appellant had confessed to some crimes and denied others—including the Dunlap Street, Bloomquist Street and Candy Lane incidents. Appellant responded by asserting that the interrogating officers also must have disclosed details of the uncharged offenses and encouraged him to deny them to bolster the credibility of his confession to the ultimately charged crimes. Appellant also claimed that one of the interrogating officers had improperly vouched for the credibility of appellant's confession by testifying that appellant was only charged with the crimes to which he had confessed. Accordingly, appellant argued the files relating to the Bloomquist Street and Candy Lane investigations were discoverable because the dissimilarities or lack of identification would demonstrate a reason for not charging appellant aside from the officer's assessment of his credibility.

The trial court disagreed, found the files contained no material exculpatory evidence, and reinstated the judgment.

Appellant contends that, at a minimum, the materials relating to the Dunlap Street investigation should have been produced: if the crime was so similar to those charges yet the victim was unable to identify appellant as her assailant, the evidence was exculpatory and appellant had a constitutional right to its production. Our independent review of the exhibits examined in camera satisfies us the trial court did not abuse its discretion by denying the discovery motion.

## DISCUSSION

A criminal defendant's right to compel discovery by "demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial" is long-standing. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531,

536 [113 Cal.Rptr. 897, 522 P.2d 305].) "But the trial court has discretion ' "to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest," ' or when there is an ' "absence of a showing which specifies the material sought and furnishes a 'plausible justification' for inspection ..." ' [Citation.] Although policy may favor granting liberal discovery to criminal defendants, courts may nevertheless refuse to grant discovery if the burdens placed on government and on third parties substantially outweigh the demonstrated need for discovery. [Citations.]" (*People v. Kaurish* (1990) 52 Cal.3d 648, 686 [276 Cal.Rptr. 788, 802 P.2d 278].) These principles were codified in 1990 by the passage of Proposition 115, the Crime Victims Justice Reform Act, which enacted Penal Code section 1054 et seq.[1]

■ It is a defense against criminal charges to show that a third person, not the defendant, committed the crime charged. (*People v. Hall* (1986) 41 Cal.3d 826, 832 [226 Cal.Rptr. 112, 718 P.2d 99].) ■ A criminal defendant has a right to present evidence of third party culpability where such evidence is capable of raising a reasonable doubt as to his guilt of the charged crime. However, as the Supreme Court explained in *People v. Hall*, "we do not require that any evidence, however remote, must be admitted to show a third party's possible culpability ... [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*Id.* at p. 833.) In addition, on appeal, the defendant must show prejudice from the erroneous denial of discovery. (*People v. Memro* (1985) 38 Cal.3d 658, 684 [214 Cal.Rptr. 832, 700 P.2d 446].)

*Candy Lane & Bloomquist Street Incidents*

The trial court did not err in denying discovery of the Candy Lane and Bloomquist Street files. The Candy Lane incident involved an attempted forcible entry into the house. The crimes charged against appellant all involved entry through unlocked or broken doors. Moreover, the Candy Lane victim never saw the suspect and could provide no description whatsoever. The Bloomquist Street victim reported a male suspect opening the gate to her backyard. She never saw the front of the suspect and could only provide a general description of height and weight. Given the lack of identification, appellant could not be excluded as a possible perpetrator of the crime and the files would not lead to exculpatory evidence.

---

[1] Unless specified all further statutory references are to the Penal Code.

*Dunlap Street Incident*

As the trial court remarked, the Dunlap Street incident shared many similarities with the crimes charged against appellant, including the time and location of the attack, mode of entry, nature of the touchings, flight of the suspect and his initial description.

The trial court denied discovery because it found the evidence more inculpatory than exculpatory. We agree with the result, but find the evidence was not material.

■ Ongoing investigations fall under the privilege for official information. (Evid. Code, § 1040.) Moreover, the victims have a constitutional right of privacy. (Cal. Const., art. I, § 1.) Both of these factors weigh heavily against a criminal defendant's right to potentially exculpatory material.

We find the present facts closely akin to those in *People v. Littleton* (1992) 7 Cal.App.4th 906 [9 Cal.Rptr.2d 288], a case argued to the trial court, but not cited in the briefs, prompting us to suggest that the parties file supplemental briefs discussing the possible application of that case here. The defendant in *Littleton* was charged with burglary and rape. On appeal, he contended the trial court abused its discretion in denying discovery of 12 police reports involving other similar burglary-rape cases in which no arrests had been made or charges brought. The defendant had appeared in a lineup before a number of the victims but was identified by only one victim. The defense argued that because the defendant had been a suspect in the other crimes and was not charged, the reports could produce evidence that a third party was responsible for the crime in the case at bar. (*Id.* at pp. 909–910.)

The trial court denied the requested discovery, finding the other crimes "unrelated by evidence or even argument" and that the privacy interests of the victims and citizen witnesses outweighed the defendant's request in light of the fact the court found no benefit to defendant would be obtained from the information. (*People v. Littleton, supra,* 7 Cal.App.4th at p. 910.)

The appellate court affirmed: "Because no one had been arrested or charged with those other crimes in this case, the information in the reports would have been of no value to the defendant unless he was able to solve the other crimes and identify the perpetrator. Defense counsel as much as conceded this during argument on the motion. Weighed against this speculative benefit was the government's legitimate need for confidentiality of ongoing police investigations and the privacy interests of the victims and witnesses identified in those other reports. Further the only connection between the present case and the other crimes was that the police had

identified defendant as a possible suspect in the other cases but had not charged him because the victims in those cases could not identify the defendant as the perpetrator. The court found this connection insufficient and the possible benefit to defendant too tenuous and speculative to outweigh both government's interest and the third parties' confidentiality and privacy interests. We find no abuse of discretion." (*People v. Littleton, supra,* 7 Cal.App.4th at p. 911.)

Appellant's argument is essentially the same as that made in *Littleton,* that by following up on the police investigation, the defense might have uncovered evidence that excluded appellant as the perpetrator. In his supplemental brief, appellant contends that *Littleton* is "an unreasonable limitation of a defendant's right to discovery" and factually distinguishable. We disagree.

Appellant claims that the *Littleton* court improperly distinguished *City of Alhambra* (1988) 205 Cal.App.3d 1118 [252 Cal.Rptr. 789], a case in which a defendant was granted discovery of police investigation files in similar cases, on the "irrelevant fact that the police had already identified and charged another suspect in that case." ■ However, this distinction is critical: the government's interest in maintaining confidentiality in a case of ongoing investigation is far greater than in a case where a suspect has been charged and the matter has entered the public view through the court system. *City of Alhambra* never considered the issue before *Littleton* and this court—i.e., whether a defendant's entitlement to potentially exculpatory material outweighs the official information privilege and a victim's privacy rights—and is not probative on this matter.

Nor, as appellant argues, did *Littleton* "fashion[] an incorrect rule" by requiring the defendant to solve the similar crimes before being entitled to the discovery of their case files. The *Littleton* court imposed no such requirement. Rather, the Court of Appeal recognized that the defense value of the other similar crime files was tenuous unless the crimes were solved. ■ The mere fact that the crimes were similar and the victim failed to identify the defendant does not provide the "direct or circumstantial evidence linking the third person to the actual perpetration of the crime" required for admissibility under *People v. Hall, supra,* 41 Cal.3d 826. In *People v. Edelbacher* (1989) 47 Cal.3d 983, 1017–1018 [254 Cal.Rptr. 586, 766 P.2d 1], evidence of the victim's association with bikers and drug dealers offered to prove that someone other than the defendant committed the crime was properly excluded because it did not identify a possible suspect other than defendant or link any third person to the commission of the crime, and did not even establish an actual motive but only a possible or potential motive for the murder by a third party. (*Ibid.*) Likewise, in *People v. Bradford* (1997) 15 Cal.4th 1229 [65 Cal.Rptr.2d 145, 939 P.2d 259] evidence of the victim's

statements that she previously had been in fear of "a man" were insufficient to link someone other than defendant to the actual perpetration of the murder. (*Id.* at p. 1325.) At a minimum, the evidence must tend to exclude the defendant as the perpetrator of the crime.

Appellant's claim that *Littleton* is wrongly decided because it fails to mention the Constitution also fails. "[P]roperly construed and applied, the discovery provisions of Proposition 115 are valid under state and federal Constitutions." (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 363 [285 Cal.Rptr. 231, 815 P.2d 304].) ■ Evidence Code section 1040 expressly requires the "necessity for preserving the confidentiality of the information" be weighed against "the necessity for disclosure in the interest of justice." (Evid. Code, § 1040, subd. (b)(2).) The "interest of justice" necessarily includes the criminal defendant's panoply of constitutional rights.

"The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.' " (*United States v. Bagley* (1985) 473 U.S. 667, 674 [87 L.Ed.2d 481, 105 S.Ct. 3375].) ■ "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 682.) This presents a heavy burden in establishing the materiality of investigation files in similar but uncharged crimes. As the *Littleton* court found, it is not enough to claim that the defense "might" have done a better job than the police in investigating the crime. The trial judge must be persuaded that, had the files been disclosed, it was reasonably probable that the defense investigation would have turned up admissible exculpatory evidence.

Appellant also claims that *Littleton* is distinguishable from the instant case because the trial court made no findings regarding the privacy of witnesses or victims or that discovery would compromise an ongoing police investigation, and appellant's counsel did not concede that the police files would be of no use unless the defense could solve the other crimes. However, this court has, pursuant to appellant's request, independently reviewed the subject materials. ■ As we review the trial court's ruling, not its reasoning, we may uphold a correct decision based on uncontradicted evidence not expressly cited by the trial court. (*People v. Mason* (1991) 52 Cal.3d 909, 944 [277 Cal.Rptr. 166, 802 P.2d 950].)

Even the few facts disclosed at the remand hearing adequately demonstrate the privacy interests of the Dunlap Street victim. A woman was the victim of a "home invasion slash sexual assault." A victim of such a crime has a strong

interest in maintaining her anonymity. Neither the official information privilege nor the victim's privacy interests were waived by the publication of the address and date of the crime. The prosecution's voluntary disclosure that the victim failed to identify appellant in a lineup and the police interrogation of appellant likewise failed to disclose sufficient facts to render the entire file discoverable.

Appellant argues that, at the time of the remand hearing, the Dunlap Street incident was not the subject of an ongoing investigation, and unlike *Littleton*, the release of the files in this case would not compromise any police activity. ■ However, the general confidentiality of police investigations accrues significant public benefit. Informants and witnesses are more likely to cooperate with law enforcement if they trust that their participation will not be made public. (*County of Orange v. Superior Court* (2000) 79 Cal.App.4th 759, 764–765 [94 Cal.Rptr.2d 261].) It is true that as time passes and an investigation lapses or is abandoned, the need for confidentiality in police files wanes. (*County of Orange v. Superior Court, supra*, 79 Cal.App.4th at pp. 768–769.) However, this decline never renders law enforcement investigative files automatically discoverable and is but one factor to consider when weighing a defendant's right to otherwise privileged information under Evidence Code section 1040.

Respondent also asks that we not follow *Littleton*, claiming it is "unhelpful" and without precedential effect because it failed to address Proposition 115's "sweeping changes to criminal discovery rules." Again, we disagree.

Respondent does not address how the enactment of the modern criminal discovery code affects the *Littleton* analysis of privilege versus constitutional rights. We conclude it has not changed.

Section 1054 provides that the purpose of the criminal discovery statutes is, in part: "to provide that no discovery shall occur in criminal cases except as provided in this chapter, *other express statutory provisions*, or as mandated by the Constitution of the United States." (§ 1054, subd. (e), italics added.) Evidence Code section 1040's conditional privilege for official information thus survived the passage of Proposition 115. (See *People v. Hammon* (1997) 15 Cal.4th 1117, 1124–1128 [65 Cal.Rptr.2d 1, 938 P.2d 986] ["we decline to extend the defendant's Sixth Amendment rights of confrontation and cross-examination to authorize pretrial disclosure of privileged information"].) Evidence Code section 1040 requires a judicial balancing of interests: "The judge must determine in each instance the consequences to the public of disclosure and the consequences to the litigant of nondisclosure and then decide which outweighs the other. He should, of course, be aware that the public has an interest in seeing that justice is done in the particular cause as

well as an interest in the secrecy of pthe information." (Assem. Com. on Judiciary com., reprinted at 29B pt. 3 West's Ann. Evid. Code (1995 ed.) foll. § 1040, p. 375.)

This same balancing is also inherent in the criminal discovery statutes. Section 1054.1 mandates the production of "[a]ny exculpatory evidence" that the prosecuting attorney "knows [] to be in the possession of the investigating agencies." Still, discovery may be denied altogether for "good cause" which includes "possible compromise of other investigations by law enforcement." (§ 1054.7.) Accordingly, the passage of Proposition 115 did not alter the trial court's task of weighing the government's claim of privilege against the defendant's constitutional right to present a defense, and *People v. Littleton* remains good precedent on this point.

Having reviewed the files in camera, we conclude the Dunlap Street file was unlikely to lead to evidence potentially material on the issue of appellant's guilt. (*Brady v. Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 83 S.Ct. 1194].) The trial court did not abuse its discretion in denying the requested discovery.

## DISPOSITION

The judgment is affirmed.

Harris, J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 24, 2003.