Filed 3/23/15  P. v. Villanueva CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CANVIS LUCILLE VILLANUEVA,<br><br>Defendant and Appellant. | F068476<br><br>(Super. Ct. No. 13CM7334C)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Peña, J. and Smith, J.

Defendant Canvis Lucille Villanueva was convicted by guilty plea of possession of drugs inside a penal institution (Pen. Code, § 4573.8)[1] for smuggling marijuana to her brother. The trial court denied probation and sentenced her to state prison for the midterm of two years. On appeal, defendant contends (1) the trial court abused its discretion by denying probation and (2) the disparate treatment under section 1170, subdivision (h) (hereafter section 1170(h)) of persons convicted under sections 4573.6 and 4573.8 violates the equal protection clauses of the United States and California Constitutions. We agree with defendant's second contention. Accordingly, we modify defendant's sentence to reflect that it is to be served in county jail rather than state prison. We affirm the judgment as so modified.

## FACTS[2]

Surveillance footage revealed that on April 28, 2013, 21-year-old defendant made an unscheduled visit to see her brother in The California Substance Abuse Treatment Facility and State Prison in Corcoran. While sitting at a table with her brother, defendant opened a bag of potato chips and placed them on the table in front of her. She placed her hand on her left breast area. An officer entered the room and defendant quickly put her hand at her side. About one minute later, she reached into her bra area and retrieved a white bindle. She put it in the potato chip bag and tossed the bag in front of her brother. He reached into the bag, then placed his hand to his mouth and swallowed. An alert was placed on defendant to make staff aware of the possibility that she was bringing drugs into the facility.

On May 26, 2013, when defendant came to visit her brother again, she was detained and searched. As she was about to remove her bra during the search, she said,

---

**1** All statutory references are to the Penal Code unless otherwise noted.

Defendant was originally charged with violating section 4573.6. This was amended to section 4573.8.

**2** The facts are taken from the probation officer's report.

"'I have four, but I'm not sure what it is.'" She removed four bindles wrapped in white latex, which together contained 89.1 grams of marijuana. This amount of marijuana had a prison value of between $17,820 and $35,640. She told an officer she had been picked up at her home by a woman and was handed four bindles to smuggle into the institution. Defendant was arrested and booked into jail.

Defendant had no criminal record, but the probation officer believed she may have committed this offense on several occasions.

On May 30, 2013, defendant was released on her own recognizance. On June 12, 2013, she began a program in a residential homeless facility called The Covenant House. On September 26, 2013, she pled guilty.

On November 7, 2013, at the sentencing hearing, the trial court stated it had considered the probation officer's report and a letter from The Covenant House. The court stated:

> "[M]y tentative decision is as follows: My understanding of the underlying facts is that [defendant] brought in a minimum of four—it looks like five actual bindles of drugs. The ones that were found consisted of 89.1 grams of marijuana, with an in-prison value somewhere between 17 thousand and 35 thousand [dollars]. She was able to pass on one bindle, if I read the report correctly, to her brother, who was an inmate.
>
> "The factors that are applicable in this case regarding sentence include her early plea and admission of guilt, her lack of criminal record. On the other hand, the probation officer notes that there's no remorse shown by the defendant.
>
> "While perhaps on—outside the institution 89 grams of marijuana would not be that valuable, within the institution they do have a high value, and that is taken into consideration.
>
> "She was an active participant. This crime did require substantial planning and some professionalism. Basically she's engaged in the trafficking of drugs into prison. It's not an impulsive crime. In thinking through the various steps that would have necessarily had to be taken, she had to acquire or purchase the drugs, after communications with the inmate to arrange for this smuggling, transport them to Kings County, package them, hide them, get past correctional officers who were surveilling her,

3.

and then have the—the ability while on camera in the presence of correctional officers to be able to effectively pass one of the bindles on to her brother.

"In determining the appropriate sentence I went over all the factors and the purposes of sentencing. And deterrence seems to rise to the top of this [list], because she has engaged in the business of trafficking drugs into the institution. The probation officer's recommendation of probation with no additional time seems to be inappropriate in this case, would serve no purpose of deterrence. [¶] And therefore my tentative is to impose the mid term of two years."

Defense counsel argued that defendant had no money, had nothing going for her, had been dealt a bad hand of cards in life, and was living in a homeless shelter with her mother. Counsel stressed that defendant was now receiving mental health counseling and housing at The Covenant House, which was the best place for her to deal with her difficult situation. He said, "I think what she was trying to do is pay for her brother. She's desperate for money." He said she was not even able to get back to Los Angeles on the train. Following counsel's lead, defendant told the court she was remorseful and would never do this again.

The court asked counsel if he was referring to a diagnosable mental illness or just counseling received at a shelter. Defendant answered, stating she had "attention deficit hyper disorder," which made it hard for her to focus, but she had been doing well at the shelter and was staying out of trouble. She was waiting to get her own apartment and start school.

Counsel added again that defendant had been in a sad situation with nothing going for her since childhood.

The court stated:

"I'm trying to juxtapose that with somebody who demonstrably came from Los Angeles, was able to transport herself up here after acquiring drugs with the intent to in[tro]duce those into a secured prison environment would have to have the wherewithal and the professionalism and the composure to drive onto prison grounds, past guards, through security, on camera after having hidden those drugs upon her person, while on camera in the presence of correctional officers purchase that bag of

4.

chips, be able to pass that one bindle that she did, brought it over to her brother. All that's demonstrated on camera. All that's demonstrated what she did. To say that she's unsophisticated or somehow a victim in this is ridiculous. She was engaged in the trafficking and introduction of narcotics or drugs into prison, and apparently did so in such an effective way that right under the noses of the correctional officers she was able to pass a bindle.

"So for those reasons I'm going to adopt my tentative, commit her to the California Department of Corrections and Rehabilitation for two years."

## DISCUSSION

### I. Denial of Probation

Defendant contends that the trial court's denial of probation was arbitrary and exceeded the bounds of reason because the court did not credit her postarrest progress at The Covenant House and because it relied on factors related to her possession of the drugs when it denied probation. We disagree.

The "grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion." (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) A court abuses its discretion by denying probation when its order is "arbitrary or capricious, or '"exceeds the bounds of reason, all of the circumstances being considered."' [Citation.]" (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.)

Here, the trial court considered the circumstances in mitigation and aggravation. The court noted that defendant admitted her guilt and lacked a criminal record, but she also showed no remorse. She was an active participant in a crime that required substantial planning and some professionalism. She succeeded in executing a complex plan to traffic drugs into the penal institution right under the supervision of correctional officers. The court believed a grant of probation would serve no deterrent purpose.

Defendant points to the letter from a mental health specialist at The Covenant House, a residential program for runaway and homeless youth, which described her as making progress in the program. The trial court, however, was not required to discuss

every circumstance on the record. The court stated it had considered the probation officer's report, which included this circumstance and attached the letter. "'A trial court may minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.] Further, unless the record affirmatively reflects otherwise, the trial court will be deemed to have considered the relevant criteria, such as mitigating circumstances, enumerated in the sentencing rules. [Citation.]" (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637.)

Defendant also argues that the court relied heavily on the fact that she was able to get drugs into prison, a fact that was very similar to the possession element of her crime and therefore could not be used to deny probation (*People v. Parrott* (1986) 179 Cal.App.3d 1119, 1125 ["If such a fact cannot be used to impose the upper term if it is an element of the crime, it should not be used to deny probation."]). We disagree with this analysis. The trial court did not rely on the fact that defendant possessed the drugs. It discussed her execution of a complex plan that, naturally, included possession of the drugs.

"We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 910.) The exercise of discretion means different courts may reasonably arrive at "different decisions, even on the same facts." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1771; *People v. Littleton* (1992) 7 Cal.App.4th 906, 911, fn. 7.) Defendant has not demonstrated that the trial court abused its discretion in denying probation.

## II. Equal Protection

Defendant also contends the disparate treatment under section 1170(h) of persons convicted under section 4573.6 (possession of controlled substances in a penal institution) and section 4573.8 (possession of drugs or alcoholic beverages in a penal institution) violates the equal protection clauses of the United States and California

6.

Constitutions because a person convicted of violating section 4573.6 may be punished in *county jail* whereas a person convicted of violating section 4573.8 is punished in *state prison*.

Section 4573.6, subdivision (a), possession of *controlled substances* in a penal institution, was amended under the 2011 Realignment Legislation to provide for the possibility of a county jail sentence.[3]  Accordingly, section 4573.6 provides in relevant part:

> "Any person who knowingly has in his or her possession in any [penal institution] … any controlled substances … is guilty of a felony *punishable by imprisonment pursuant to* [*section 1170(h)*] for two, three, or four years."  (Italics added.)

According to section 1170, subdivision (h)(2), "a felony punishable pursuant to this subdivision shall be punishable by imprisonment *in a county jail* for the term described in the underlying offense."  (Italics added.)

The related section 4573.8, possession of *drugs or alcoholic beverages* in a penal institution, under which defendant was convicted, was *not* amended under the 2011 Realignment Legislation to provide for the possibility of a county jail sentence.  Thus, it provides in relevant part:

> "Any person who knowingly has in his or her possession in any [penal institution] … drugs … or alcoholic beverages … is guilty of a felony."

---

**3**    "The Legislature enacted the 2011 realignment legislation addressing public safety (Realignment Legislation) to address a fiscal emergency and public safety by '[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs ….' (§ 17.5, as added by Stats. 2011, ch. 15, § 229; see Stats. 2011, ch. 15, § 638; see also *People v. Guillen* (2013) 212 Cal.App.4th 992, 995.)  'Realignment "shifted responsibility for housing and supervising certain felons from the state to the individual counties." [Citation.]  Felons eligible to be sentenced under realignment now serve their terms of imprisonment in local custody rather than state prison.  [Citations.]' (*People v. Montrose* (2013) 220 Cal.App.4th 1242, 1246.)" (*People v. Noyan* (2014) 232 Cal.App.4th ___, ____ [2014 Cal.App. Lexis 1156] (*Noyan*).)

Where no punishment is provided, as here, a felony is "punishable by imprisonment for 16 months, or two or three years *in the state prison* unless the offense is punishable pursuant to [section 1170(h)]." (§ 18, subd. (a), italics added.)

As a result, those convicted under section 4573.6 of the more serious crime of possession of a controlled substance are allowed to serve their term in county jail (although it might be a longer term), whereas those convicted under section 4573.8 of the less serious crime of possession of other drugs or alcohol are required to serve their term in state prison.

*Noyan*, *supra*, ___ Cal.App.4th ___, which was filed after the parties submitted their briefs, addressed this issue in the context of two analogous statutes, sections 4573 and 4573.5. For the reasons discussed in that case, we agree with defendant's contention. We provide only a brief synopsis of *Noyan.*

Section 4573 provides in relevant part:

> "[A]ny person, who knowingly brings or sends into … any [penal institution] … any controlled substance … is guilty of a felony *punishable by imprisonment pursuant to* [*section 1170(h)*] for two, three, or four years." (Italics added.)

Section 4573.5, which, like section 4573.8, was not amended under the 2011 Realignment Legislation, provides in relevant part:

> "Any person who knowingly brings into any [penal institution] … any alcoholic beverage, any drugs, other than controlled substances … is guilty of a felony."

The *Noyan* court set out a thorough discussion of the issue, which we do not repeat here, and concluded:

> "We find no rational basis to support the exclusion of section 4573.5 from punishment pursuant to section 1170(h) (i.e., incarceration in county jail instead of state prison) when similarly situated violators of section 4573 are punished pursuant to section 1170(h). Therefore, we find the sentencing scheme for section 4573.5 violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution, and we modify [the] defendant's

8.

judgment accordingly." (*Noyan*, *supra*, ___ Cal.App.4th at p. ___, fn. omitted.)[4]

The court considered available remedies, stating:

"'In choosing the proper remedy for an equal protection violation, our primary concern is to ascertain, as best we can, which alternative the Legislature would prefer.' [Citations.] An express purpose in enacting the Realignment Legislation was to '[realign] low-level felony offenders … to locally run community-based corrections programs' to decrease recidivism and improve public safety (§ 17.5, subd. (a)(5).) Therefore, we conclude the Legislature would prefer that section 4573.5 be reformed to make reference to the sentencing provisions of section 1170(h) to further that legislative purpose." (*Noyan*, *supra*, ___ Cal.App.4th at p. ___.)

The court modified the judgment to reflect that the same sentence would be served in county jail instead of state prison. We will do the same here.

## DISPOSITION

The judgment is modified to reflect that defendant's sentence of two years is to be served in county jail instead of state prison. The trial court is ordered to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

---

**4** The court noted: "[The] defendant's failure to object to the imposition of the sentence at trial would usually result in a forfeiture of the contention, even where constitutional rights are involved. [Citations.] However, assuming [the] defendant's equal protection argument is correct, the court imposed an unauthorized sentence, which may be corrected at any time. [Citations.] Therefore, we address [the] defendant's claim on the merits." (*Noyan*, *supra*, ___ Cal.App.4th at p. ___, fn. 4.)