Filed 12/22/14  P. v. Ramudo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C074234 |
| v. | (Super. Ct. No. 62120197) |
| ANTONIO MANUEL RAMUDO, | |
| Defendant and Appellant. | |

Defendant Antonio Manuel Ramudo entered a no contest plea to arson of an inhabited structure (Pen. Code, § 451, subd. (b); count one)[1] and admitted he used a device designed to accelerate the fire or delay ignition of the fire (§ 451.1, subd. (a)(5)). Defendant entered his plea in exchange for dismissal of the remaining counts [arson of a structure or forest (§ 451, subd. (c); count two); possession of flammable material (§ 453, subd. (a); count three)].

The trial court denied probation, finding the presumption of ineligibility was not overcome.  The court sentenced defendant to state prison for the low term of three years

---

[1]     Undesignated statutory references are to the Penal Code.

1

for the underlying offense. The court imposed a three-year low term for the enhancement and then struck the additional punishment pursuant to section 1385.

Defendant appeals. He contends the trial court abused its discretion in finding the presumption of ineligibility for probation was not overcome, claiming the court failed to give significant weight to his age and lack of criminal sophistication. We conclude there was no abuse of discretion. Defendant also challenges the award of custody credits, claiming his offense was a serious, not a violent, offense, the 15 percent limitation of section 2933.1 was eliminated with the 2011 amendment of section 4019, and he is entitled to additional credit for time spent in custody from the date he was sentenced to the date the restitution order was entered. We reject defendant's credits contentions. However, we conclude the trial court made an addition error in its calculation of presentence custody credits and order the judgment modified.

FACTS AND PROCEDURAL HISTORY

Around midnight on November 8, 2012, Mark C., his wife Barbara C., and their teenage twins, son M.C. and daughter N.C., were awakened by their home's burglar alarm. They had been sleeping upstairs in their two-story home. Mark ran downstairs and found the front window was broken and a fire was burning the carpet in front of the window. Mark and M.C. put out the fire with water from the kitchen.

Sheriff deputies arrived and found a note taped to the family's front door that read, "Leave Town." Inside the broken window, deputies found a large stone, a sock soaked in flammable liquid, and multiple burn spots on the carpet. On the ground outside the broken window, deputies found a wine bottle with a flame at the top. In the front yard, deputies found a lighter with a marijuana leaf sticker. Deputies concluded the sock and wine bottle had been used to make a "Molotov Cocktail" that fell apart before it completely entered the home.

M.C. and N.C. thought defendant and E.G. were responsible for the fire. M.C. and N.C. had had disputes with defendant and E.G. N.C. stated defendant and E.G. chased

2

her home from school when she was in the seventh grade and defendant threw a light bulb at her head when she was in high school in October 2012. After M.C. confronted defendant about the light bulb incident, defendant and E.G. started to harass and insult M.C. The day after the fire, N.C. saw defendant and E.G. staring at her and talking nervously.

Sheriff deputies contacted E.G. Although E.G. initially denied knowing anything about the fire, he eventually stated defendant threw the "Molotov Cocktail" into the home because defendant did not like M.C. and N.C. E.G. was not present. E.G. claimed defendant told him he threw a rock through the window and then the device. The sock fell out but a fire started and defendant ran. E.G. stated defendant owned a lighter identical to the one found by the deputies.

Sheriff deputies interviewed defendant at his home. Defendant initially denied knowing anything about the fire but when confronted with E.G.'s statements, defendant explained, " 'I took a rock and broke the window and then I threw the Molotov Cocktail through the window.' " Defendant stated the sock fell out but went inside and started a fire, and the bottle fell to the ground. Defendant then fled. Defendant stated he used lawn mower gasoline as fuel. He committed the offense because he does not like M.C. and N.C., and wanted to scare them. When asked if he intended to kill them, defendant said he was just trying to scare them and did not know what he would have done if they died. Defendant's father explained defendant probably obtained the empty wine bottle from the trash.

A petition filed in juvenile court alleged defendant committed attempted murder (four counts), arson of an inhabited structure, arson of a structure or forest, possessed flammable material, and used a device designed to accelerate the fire or delay ignition of the fire. Defendant was detained. Thereafter, the prosecutor dismissed the four counts of attempted murder. After a fitness hearing, defendant was found unfit for juvenile court.

The felony complaint filed in adult court charged the same offenses as alleged in the juvenile petition except the attempted murder counts. Defendant was released on pretrial home detention with a GPS monitoring device. He complied with the terms and conditions of supervised release. After defendant entered his plea, he was remanded into custody with no bail.

## DISCUSSION

### I

### *Presumption of Ineligibility for Probation*

Defendant contends the trial court abused its discretion in finding the presumption of ineligibility for probation was not overcome. He claims the court failed to give significant weight to his age and lack of criminal sophistication. We conclude the trial court did not abuse its discretion.

### A.

### *Additional Background*

The probation report stated defendant was ineligible for probation (§ 1203, subd. (e)(9)) unless the court found unusual circumstances warranted a grant of probation.[2] Although noting unusual circumstances existed (defendant was youthful: 15 and a half years of age at the time of the offense, and he lacked a record of criminal conduct), the probation officer opined such circumstances did not outweigh the seriousness of defendant's crime, especially in view of his youthfulness, which "add[ed] to the overall

---

[2]     Section 1203, subdivision (e), provides:

"(e)  Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons: [¶] . . . [¶] (9) Any person who . . . intentionally set fire to, burned, or caused the burning of, an inhabited structure or inhabited property in violation of subdivision (b) of Section 451."

seriousness of his actions."[3]  With respect to remorse, the probation officer noted

defendant brought with him to the probation interview his written statements wherein he

---

[3]      Rule references are to the California Rules of Court.  Rule 4.413 provides in relevant part:

"(b)  If the defendant comes under a statutory provision prohibiting probation 'except in unusual cases where the interests of justice would best be served,' or a substantially equivalent provision, the court should apply the criteria in (c) to evaluate whether the statutory limitation on probation is overcome; and if it is, the court should then apply the criteria in rule 4.414 to decide whether to grant probation.

"(c)  *Facts showing unusual case*

"The following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate:

"(1)  *Facts relating to basis for limitation on probation*

"A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including:

"(A)  The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and

"(B)  The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense.

"(2)  *Facts limiting defendant's culpability*

"A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including:

"(A)  The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence;

"(B)  The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and

5

claimed to be remorseful. But when the probation officer told defendant during the interview it was hard to believe his claim he did not intend to hurt anyone, defendant became angry, clenched his jaw, tightened his lips and commented, " 'It's funny how everyone thinks that way.' " Defendant also told the probation officer he was upset with the minor who turned him in to the police. The probation officer also recounted defendant's version of the incident. Defendant admitted that at first, he planned to firebomb the victims' car but there was no car parked in front when he arrived "the night before."

The prosecutor filed written opposition to a finding of probation eligibility. The prosecutor argued rule 4.413(c)(1)(A) did not apply because defendant's violent attack on the victims was "sophisticated, intentional, methodical, pre-planned and organized" with the goal of forcing the victims to leave town. Based on the psychological evaluation performed for the defense, the prosecutor claimed "defendant clearly understood the devastating effect" of the device he used. The prosecutor noted defendant "methodically acquired the parts," assembled the device, used it at night when the victims were most vulnerable, and then fled to avoid detection. He thereafter initially denied involvement when confronted by the deputies. The prosecutor argued defendant's acts were not substantially less serious than circumstances typically present in other arson cases.

With respect to the facts limiting defendant's culpability as set forth in rule 4.413(c)(2)(A) through (C), the prosecutor argued all had to apply because of the conjunctive language and none did except (C), which related to defendant's youthfulness and his lack of a significant criminal record. With respect to (A), the prosecutor claimed "defendant was not provoked, coerced, or under duress when he committed this violent attack," noting his motive was anger over an exchange of words a week before the arson.

"(C) The defendant is youthful or aged, and has no significant record of prior criminal offenses."

6

With respect to (B), the prosecutor argued there was no evidence defendant committed the offense because of a mental condition, citing the report of the defense psychologist who concluded that " 'objective psychological testing shows the defendant is <u>NOT</u> experiencing any severe, psychiatric level disturbance,' " defendant has " 'good intellectual capabilities and understanding' " and he was simply " 'a troubled adolescent who is struggling with adjustment and is using drugs and alcohol as self medication for these difficulties.' "

With respect to (C), the prosecutor conceded defendant was youthful at the time of the offense and had no prior criminal arrests or convictions. The prosecutor noted, however, defendant had "committed prior assault and battery offenses that went unprosecuted," citing the defense psychologist's report wherein defendant admitted throwing light bulbs at "Brian" more than once and hit N.C. with a light bulb. The prosecutor stated the "best interest" of defendant was not a factor for a finding under rule 4.413 and section 1203, subdivision (e)(9).

In his sentencing memorandum, defense counsel sought probation for defendant, arguing the unusual circumstances finding was warranted based on his youthfulness at the time of the crime, his lack of a prior criminal record, and his mental condition. Defense counsel argued defendant's "ridiculous overreaction to this perceived injustice directed at him by the C[.] teenagers can only be described as the immature and rash acts of a 15 year old expressing poor judgment and not having the ability to control his anger, this one time, due to his psychological inadequacies." Defense counsel cited the psychological evaluation by Dr. Roeder who described defendant as " 'experienc[ing] highly troubled and unpredictable moods, impulsivity and the feelings of being cheated, misunderstood and unappreciated.' " Defense counsel argued defendant would not get the "necessary psychological treatment, education and direction to improve his life and make him a better citizen once he gets out of prison several years from now."

7

At sentencing, the trial court stated it had read and considered the probation report and the parties' sentencing memorandums and attachments. The prosecutor reiterated his argument that defendant was presumptively ineligible for probation and the court could not make an unusual case finding based on the facts. With respect to the seriousness of the offense, although the prosecutor agreed the fire was not a large fire, he disagreed such fact was a mitigating factor. He argued it was "pure luck" the four victims were not dead, noting the "Molotov Cocktail" did not explode and accelerate the fire as planned, prepared, and intended by defendant because the device fell apart at the window. The prosecutor also noted the victims had a burglar alarm that woke them up when the rock broke the window. With respect to defendant's remorse, the prosecutor contrasted defendant's expression of remorse in his written statement prepared *before* his interview with the probation officer and his verbal and almost physically aggressive responses *during* his interview about being "ratted" out by a friend, and indifferent attitude toward having almost killed four people. The prosecutor "view[ed] that as a significant aggravating factor" and commented that the probation officer was not convinced defendant was not a danger to society.

Defense counsel argued the "only possible sentence you can give [defendant] is probation" since the case was a "classic textbook unusual circumstance" one under rule 4.413. He argued defendant's moral blameworthiness was reduced. He also argued defendant was a juvenile offender who had lessened culpability and was less deserving of the most severe punishment. Defense counsel claimed the probation report "focus[ed] on vengeance, retribution and punishment." Defense counsel suggested defendant, who was the "sorriest person in this courtroom about what happened," was most likely surprised by the confrontation style of the probation officer who was "twice" defendant's size and had a "very dominant personality." Defense counsel also claimed the prosecutor incorrectly argued the best interests of justice could not be considered and every subsection of rule 4.413 had to be met. Defense counsel argued rule 4.413 was not on its

8

face exclusive of the circumstances that could be considered and the court could consider any criteria reasonably related to the decision under rule 4.408. Defense counsel also discussed other local cases where the youthful offenders were sentenced to juvenile hall or county jail. Citing the psychological evaluation, defense counsel claimed defendant could be rehabilitated because he had potential if given the treatment he needed.

In reply, the prosecutor argued the primary objective of sentencing was to protect society and objected to the court considering the sentences imposed in other local cases because the facts in those cases were not before the court. The prosecutor was concerned with defendant's reaction the next time someone challenged him.

"[G]iven the gravity of the issues of this case and the importance of the decision to this particular Defendant," the court continued the sentencing hearing to fully consider the arguments and cases cited.

At the continued sentencing hearing, the trial court recognized defendant was youthful ("15 when this happened, and he is now 16") and defendant had no prior record or had an insignificant record of criminal conduct. The court determined the probation limiter was not overcome. In discussing the seriousness of the offense, the court cited the psychologist's evaluation that recounted defendant's description of the effects of a "Molotov Cocktail" as "more like accelerated arson": " 'You have a big ball of fire' " similar to a " 'fire bomb' " that does not explode but the "glass breaks and the fire goes everywhere." Having described the crime in detail, the court found the "crime was carefully planned out and executed" and was a "serious matter." The court considered and rejected any claim the offense occurred under great provocation, coercion, or duress, commenting that instead of complaining about the teenage victims to school officials, the victims' parents, or defendant's parents, defendant told the psychologist he could not "really think of any other way" to address his perception of being ostracized or bullied by the teenage victims other than the course he chose. The court found defendant was not suffering from a mental condition amounting to a defense, citing the psychological

9

evaluation and determining defendant had "good intellectual capabilities" and was "not experiencing any severe psychiatric level disturbance," but was simply a "troubled" youth who was "struggling with his adjustment" and difficulties in his family relationships by using "drugs and alcohol." The court noted although there was "some evidence of remorse" there was also the fact defendant initially denied involvement and was displeased with friends who had "ratted him out." The court also noted that when asked about his future plans, defendant expressed no concerns about the victims.

The trial court then imposed the state prison sentence for the underlying offense and struck the punishment for the enhancement, citing, in part, defendant's youth and lack of a record.

**B.**

*Analysis*

Defendant contends the trial court abused its discretion in failing to find unusual circumstances, arguing such circumstances are present here. He stresses his youth, pointing out he was 15 at the time of the arson, his lack of a criminal record, his compliance with pretrial release, and his mental health problems, which he argues, the court only mentioned briefly.

"Under rule 4.413, the existence of any of the listed facts does not necessarily establish an unusual case; rather, those facts merely '*may* indicate the existence of an unusual case.' [Citation.] This language indicates the provision 'is permissive, not mandatory.' [Citation.] '[T]he trial court may but is not required to find the case unusual if the relevant criterion is met under each of the subdivisions.' [Citation.]" (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.)

The trial court's finding as to whether the case is unusual is reviewed for an abuse of discretion as is a trial court's decision to grant or deny probation. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831; *People v. Cazares* (1987) 190 Cal.App.3d 833, 837.) " 'An order denying probation will not be reversed in the absence of a clear

10

abuse of discretion. [Citation.] In reviewing the matter on appeal, a trial court is presumed to have acted to achieve legitimate sentencing objectives in the absence of a clear showing the sentencing decision was irrational or arbitrary. [Citations.]' [Citation.]" (*People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1091.)

Here, the trial court noted defendant's youth and insignificant criminal conduct but found the nature, seriousness, and circumstances of the crime warranted a prison commitment. Defendant complains the trial court did not consider recent cases discussing a minor's reduced level of culpability, arguing his reactions were those one would expect from a minor. Defendant argues the court pointed to these factors but did not weigh them. We disagree. The trial court continued the sentencing hearing after argument to fully consider the claims and cases cited. The court's statements on the record reflect that it did consider and weigh his arguments but rejected them.

" 'A trial court may minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.] Further, unless the record affirmatively reflects otherwise, the trial court will be deemed to have considered the relevant criteria, such as mitigating circumstances, enumerated in the sentencing rules. [Citation.]" (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637.) "We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 910.)

The exercise of discretion means different courts may reasonably arrive at "different decisions, even on the same facts." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1771; *People v. Littleton* (1992) 7 Cal.App.4th 906, 911, fn. 7.) Defendant has not demonstrated that the trial court abused its discretion in arriving at its decision that the presumption of probation ineligibility was not overcome.

## II

### *Presentence Custody Credit*

Defendant brings three challenges to the trial court's award of presence custody credit. He argues: (a) the trial court erred and violated his right to due process by limiting accrual of conduct credit to 15 percent under section 2933.1 because he pled guilty to arson of an inhabited structure "as a serious, rather than violent, felony"; (b) the 2011 amendments to section 4019 eliminated the 15 percent conduct credit limitation of section 2933.1; and (c) he is entitled to presence custody credit for time spent in custody after he was sentenced, but before the restitution order was entered. We address and reject each of these contentions below. We also conclude defendant was awarded too many -- not too few -- days of presence custody credit. We therefore modify the judgment to award the correct amount of credit and affirm the modified judgment.

### A.

### *Section 2933.1's Conduct Credit Limitation Applies to Defendant*

"Persons who remain in custody prior to sentencing receive credit against their prison terms for all of those days spent in custody prior to sentencing, so long as the presence custody is attributable to the conduct that led to the conviction. (§ 2900.5.) This form of credit ordinarily is referred to as credit for time served. [¶] Additional credit may be earned, based upon the defendant's work and good conduct during presence incarceration. (§§ 2900.5, subd. (a), 4019.) Such presence credit is referred to as conduct credit." (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

Section 2933.1 limits presence conduct credit to "15 percent of the actual period of confinement" for "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 . . . ." (§ 2933.1, subds. (a) & (c).) Section 667.5, subdivision (c), contains 23 paragraphs defining the term "violent felony," paragraph (10) of which lists: "Arson, in violation of subdivision (a) or (b) of Section 451." (§ 667.5, subd. (c)(10).)

Defendant pled no contest to one count of arson of an inhabited structure, in violation of section 451, subdivision (b), subjecting him to the 15 percent limitation of section 2933.1. Nevertheless, he argues this limitation does not apply because (1) "arson can be either a violent felony pursuant to section 667.5, subdivision (c)(10) or a serious felony pursuant to section 1192.7, subdivision (c)(14)," (2) "in the charging document, the prosecutor alleged the arson was a serious felony," and (3) the plea form he signed "listed the section 451, subdivision (b) charge as a serious felony." We are not persuaded. While defendant is correct that arson, in all its forms, is a serious felony (§ 1192.7, subd. (c)(14)), the particular form of arson to which he pled no contest, i.e., arson of an inhabited structure, is also a violent felony (§ 667.5, subd. (c)(10)). Nor does it matter that the charging document listed arson as a serious felony. This is because "facts invoked to limit credits need not be formally pled or proved." (*People v. Lara* (2012) 54 Cal.4th 896, 902.) Finally, while a plea must be "knowing, intelligent, and voluntary," which "presupposes the defendant knows all the 'direct consequences' of his [or her] plea," a defendant need not be advised of " 'collateral consequences,' " including "limitations on one's ability to earn conduct and work credits." (*People v. Aquirre* (2011) 199 Cal.App.4th 525, 528.) Thus, defendant pled no contest to a violent felony, subjecting him to the 15 percent limitation of section 2933.1, regardless of the fact the charging document and plea form did not formally notify him that arson of an inhabited structure is such a felony.

Defendant also argues his right to due process was violated. Not so. Indeed, a similar argument was rejected in *People v. Fitzgerald* (1997) 59 Cal.App.4th 932, cited with approval by our Supreme Court in *People v. Lara*, *supra*, 54 Cal.4th 896. There, the defendant was charged with five violent felonies and pled guilty to one such felony. (*Fitzgerald*, *supra*, 59 Cal.App.4th at p. 935.) However, the charging document "did not apprise him of the possibility he would only receive 15 percent of presentence conduct credits." (*Id*. at p. 936.) Disagreeing with the defendant's claim that limiting the accrual

13

of such credits to 15 percent violated due process, the Court of Appeal explained:

" '[T]he purpose of the charging document is to provide the defendant with notice of the offense charged. (§ 952.) The charges thus must contain in substance a statement that the accused has committed some public offense, and may be phrased in the words of the enactment describing the offense or in any other words sufficient to afford notice to the accused of the offense charged, so that he or she may have a reasonable opportunity to prepare and present a defense.' [Citations.]" (*Ibid*.) The court explained the information filed in the case complied with the foregoing rule and concluded: "All of the charged sex offenses are violent felonies listed in section 667.5. Hence, charging defendant with five violent felonies was sufficient to constitutionally inform him of the nature of the charges including the 15 percent limitation on presentence conduct credits." (*Id*. at pp. 936-937.)

Here too, defendant was charged with an offense listed in section 667.5 as a violent felony and pled no contest to committing this violent felony. He does not claim the charging document failed to adequately advise him of the nature of the crime and there is no constitutional requirement that it also list the crime as a violent felony subject to the 15 percent limitation of section 2933.1. Nor is there any constitutional requirement that the plea form list the crime as a violent felony subject to the 15 percent limitation. (See *People v. Aquirre*, *supra*, 199 Cal.App.4th at p. 528.) We must therefore reject defendant's assertion that due process requires us to conclude he pled "to arson as a serious, rather than violent, felony."

In any event, even if we were to conclude due process required defendant to be specifically informed that arson of an inhabited structure is a violent felony, he was so informed during the plea colloquy. At the entry of plea hearing, the prosecutor set forth the plea agreement: "Your Honor, the People have -- we've offered to -- basically a plea to Count One, which is a *violent* felony, arson of a[n] inhabited structure which has an exposure of three, five or eight years. [¶] And also, we ask that the defendant admit the special allegation which is pursuant to . . . Section 451.1, which is the use of a device to

14

accelerate the fire, which has a triad of three, four, five. We have made no promises in this case." (Italics added.) Defense counsel did not object when the prosecutor described the offense as a violent felony. The prosecutor noted defendant's exposure was 13 years. Defense counsel stated the plea agreement was "spelt out on the plea form." The court reviewed the plea form with defendant, obtained a factual basis for the plea, and then accepted defendant's plea. After the court accepted defendant's admission of the enhancement allegation, the prosecutor asked for remand because defendant stood "convicted of a *violent* felony and he's pending sentencing." (Italics added.) In opposing remand, defense counsel did not object to the prosecutor's description of the offense as a violent felony. Thus, defendant was notified arson of an inhabited structure qualified as a violent felony.

**B.**

### *The 2011 Amendments to Section 4019 Did Not Eliminate Section 2933.1's Conduct Credit Limitation*

Defendant claims he is entitled to day-for-day conduct credit under the 2011 Realignment Act, arguing section 4019 as amended eliminated the exclusions in section 2933.1. We disagree.

As the prosecutor correctly noted at sentencing, the Realignment Act did not affect the 15 percent limit in section 2933.1 that was not repealed. (Stats. 2011, ch. 15, § 482.) Our colleagues at the Second Appellate District explained in *People v. Rosales* (2014) 222 Cal.App.4th 1254 (*Rosales*): "The October 1, 2011 adoption of section 4019, subdivisions (b), (c) and (f) was not intended to repeal the less generous presentence conduct provisions of section 2933.1, subdivision (c). Section 4019 makes no reference to section 2933.1, subdivision (c). Therefore, any repeal necessarily would have been by implication. Repeals by implication are disfavored. [Citations.] Our Supreme Court has explained: 'Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially

15

conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " ' [Citation.] [¶] First, there is a rational basis for harmonizing sections 4019, subdivisions (b), (c) and (f) and 2933.1, subdivision (c). Violent felonies are more serious and logically warrant greater periods of incarceration. Nonviolent felonies, some which result in county jail sentences pursuant to section 1170, subdivision (h)(2) and involve less serious crimes, result in greater credits. Second, the two presentence conduct credits provisions are not irreconcilable, clearly repugnant and so inconsistent that the two cannot operate concurrently. There are two distinct presentence conduct credits at issue here. The first is for offenders who do not commit violent felonies. The second is for offenders who commit violent felonies. These two sentencing schemes operate concurrently depending on whether the offense is specified in section 667.5, subdivision (c). (We need not discuss section 2933.2, subdivision (c) which prohibits presentence credits for murderers.) Thus, section 2933.1, subdivision (c) has not been expressly or impliedly repealed." (*Id*. at p. 1262.)

Defendant argues this court is not bound by *Rosales*. While true, we find its reasoning persuasive and will follow it. Because section 2933.1 was not repealed by amended section 4019, and because defendant was convicted of a violent felony, the trial court properly limited his accrual of presentence conduct credit to 15 percent under section 2933.1.

## C.

### *Defendant is Not Entitled to Presentence Custody Credit for Post-sentence Custody*

We also reject defendant's claim that he is entitled to presentence custody credit for time spent in custody after he was sentenced, but before the restitution order was entered.

On June 7, 2013, the trial court imposed the prison term but continued the matter to June 24, 2013, to determine the custody credit issue after briefing (defendant's

16

attorney claimed defendant was entitled to day-for-day credit "even if a strike offense") as well as the issue of defendant's housing while in prison. The court reserved jurisdiction on the issue of victim restitution.

On June 24, 2013, the trial court awarded custody credits and ordered defendant housed in the juvenile detention facility, remanding defendant and ordering the sheriff to transport defendant when directed by the Division of Juvenile Justice. Defense counsel requested that defendant remain in the county facilities until the court decided the restitution issue. The prosecutor had no objection and the court so ordered provided it did not violate "some policy." The court advised defendant of his right to appeal.

On January 8, 2014, the parties entered a stipulation concerning restitution. Defendant appeared as a sentenced prisoner. In response to defense counsel's request for updated credits, the trial court denied additional presentence credits.

We reject defendant's claim of entitlement to *presentence* custody credits for time spent in custody after June 24, 2013, to January 8, 2014. Defendant was serving time as a sentenced prisoner.

### D.

### *Error in Calculating Presentence Custody Credit*

We note the trial court made an addition error that led to an award of too many days of presentence custody credit. Defendant was entitled to credit for actual days from November 8, 2012, to March 4, 2013, and April 24, 2013, to June 24, 2013, which totals 179 days, not 189 days as calculated by the trial court. Fifteen percent of 179 days is 26 days of conduct credits under section 2933.1. The court properly ordered credit for actual days of pretrial release or 51 days. Defendant's presentence custody credit total is 256 days. We order the judgment modified accordingly.

### DISPOSITION

The judgment is modified to provide for 179 actual days, 51 days of pretrial release, and 26 conduct days for a total of 256 days of presentence custody credits. The

17

trial court is ordered to prepare an amended abstract of judgment accordingly and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                                                             HOCH     , J.


We concur:


      RAYE     , P. J.


      ROBIE     , J.