RENDERED: MARCH 25, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0530-MR

JONATHAN F. DAVIS          APPELLANT

V.

ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
NO. 19-CR-00263

COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING**

A Fayette Circuit Court jury found Jonathan F. Davis guilty of one count of theft of mail matter[1] and of being a persistent felony offender in the first degree (PFO).[2] Consistent with the jury's recommendation, the trial court sentenced Davis to three-and-a-half years' imprisonment on the theft charge, enhanced to the maximum twenty years' imprisonment. Davis now appeals as a matter of right, arguing multiple points of error. *See* KY. CONST. § 110(2)(b). After careful review of the record and arguments of the parties, we affirm the Fayette Circuit Court.

---

[1] Kentucky Revised Statute (KRS) 514.140.

[2] KRS 532.080.

## I. BACKGROUND

On October 19, 2018, Jonathan Davis removed two packages from the front stoop of a residence owned by Stacey and Mike Davis[3] on Stone Road in Lexington, Kentucky. The packages had been delivered by the United States Postal Service (USPS) for Stacey Davis, a teacher, and contained six medical coding books as well as a pair of headphones. Stacey realized the packages were missing when she received a notification from Amazon that they had been delivered despite the fact that they were not outside.

Later that afternoon, Stacey and Mike checked the recordings from the security camera installed near their front door. The footage showed a USPS employee set the packages on Stacey and Mike's front steps at around 10:00 a.m. Nearly two hours later, the footage showed a man approach Stacey and Mike's front door, remove the packages from their steps, and drive away in a silver GMC Envoy. After viewing the recordings, Stacey reported the incident to the police.

The following day, Stacey and Mike saw a man who resembled the man from the security footage hosting a yard sale in their neighborhood. A silver GMC Envoy was parked in the man's driveway. Stacey took photos of the man and his vehicle and then searched the yard sale for her items but did not find them. She then reported this information to police. Lexington Police Officer Nick West went to Davis's home and spoke with him, and Davis denied being on Stone Road when the packages were stolen.

---

[3] Jonathan Davis is not related to either Stacey or Mike Davis.

Eventually, the case was assigned to Detective Jason Newman. Det. Newman called Davis and left a voicemail asking Davis to return the call. A few days later, Davis returned Det. Newman's call and admitted taking the packages from the front porch. Davis also told Det. Newman that he had sold the books at his yard sale. The day after the phone call, Davis met with Det. Newman to receive a citation to appear in court for the incident.

Davis was indicted on one count of theft of mail matter and PFO. At trial, the jury heard testimony from Stacey and Mike describing the events surrounding the theft and from police officers to whom Davis made various statements during the investigation. The jury also heard a recorded phone call between Davis and his girlfriend in which he stated that he told Det. Newman that he had stolen the packages. Based on the foregoing evidence, the jury found Davis guilty of both counts in the indictment. The jury recommended a sentence of three-and-a-half years on the theft of mail matter charge, enhanced to twenty years on the PFO. The trial court sentenced Davis consistently with this recommendation.

Additional facts will be discussed below as necessary.

## II. ANALYSIS

On appeal, Davis raises several issues for our review: (1) that the trial court erred in denying his motion for a directed verdict; (2) that the trial court erred in denying his request for a lesser jury instruction on theft by unlawful taking under $500; (3) that the trial court erred in denying his *Batson*[4]

---

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986).

challenge to the Commonwealth's strike of Juror #4070; (4) that the trial court erred in admitting victim impact testimony during the guilt phase of the trial; and, (5) that a clerical error in the final judgment requires correction. We will review each of these issues in turn.

### A. The trial court did not err in denying Davis's motion for a directed verdict.

Davis first argues that the trial court erred in denying his motion for a directed verdict on the charge of theft of mail matter. This argument is preserved by his motion for a directed verdict at the close of the evidence.

Our directed verdict standard has been firmly established in *Commonwealth v. Benham*:

> On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

816 S.W.2d 186, 187 (Ky. 1991).

Under Kentucky Revised Statute (KRS) 514.140(1),

> A person is guilty of theft of mail matter when with intent to deprive the owner thereof he:
> (a) Steals;
> (b) By fraud or deception obtains;
> (c) Embezzles;
> (d) Conceals;
> (e) Damages; or
> (f) Destroys;

4

any mail matter of another (including but not limited to any letter, postal card, package, bag, or other item) from any letterbox, mail receptacle, or other authorized depository for mail matter, or from a letter carrier, postal vehicle, or private mail box or which has been left for collection or delivery adjacent thereto by the United States Postal Service.

To the trial court, Davis argued that he was entitled to a directed verdict because the Commonwealth failed to prove the location of the mail matter. To this Court, he again argues that the Commonwealth failed to prove the location of the mail matter but also argues specifically that the Commonwealth "did not prove the packages were left sufficiently near or close to [Stacey and Mike's] mailbox."

Although both parties and the trial court focused almost entirely on the "adjacent" language in the statute, stealing mail matter that is left adjacent to a mailbox is only one theory under which a person can be found guilty of theft of mail matter. The statute also permits a finding of guilt if the mail matter is stolen from any "other authorized depository for mail matter." On this point, it is important to note that at the time Davis made his motion for directed verdict, the jury instructions had been discussed, but the trial court had not yet made a final determination of what those instructions would say. It is also important to note that the indictment returned by the grand jury in the case did not rely on any specific location of the mail matter. The indictment charged Davis with theft of mail matter "when he unlawfully stole mail matter belonging to S. Davis, including but not limited to packages, which had been left for collection or delivery by the United States Postal Service."

5

It is notable that KRS 514.140 uses the disjunctive *or* several times to establish multiple equally legitimate circumstantial bases for a conviction, practically listing a range of familiar circumstances. Although not defined by KRS 514.010 or the Kentucky Penal Code, *authorized depository* operates as a broader residual term. Although one might be inclined toward an unduly narrow construction of that term that would confine its meaning to post offices, mailboxes, or other enclosed structures of same purpose, a closer look reveals this would reduce the term to a redundancy, as *letterbox* and *mail receptacle* are already specifically listed in the same discrete series, with the articles becoming more general as the series progresses. We may presume the legislature did not intend a total redundancy or surplusage by including *authorized depository* in the series,[5] and that the term has its own meaningful application. It follows that, more appropriately construed to achieve the purpose of the statute,[6] *authorized depository* includes any place where a mail recipient either specifically directs or would otherwise reasonably or customarily expect mail to be placed or stored for delivery,[7] regardless of how adjacent the package is to a recipient's mailbox or door.

---

[5] John M. Golden, *Redundancy: When Law Repeats Itself*, 94 Tex. L. Rev. 629 (2016) (discussing the historic tendency of courts and lawyers to interpret constitutions, statutes, contracts, and other legal documents to avoid redundancy where possible).

[6] Namely, obviously, to prevent the wrongful taking of mail matter from others as a societal evil distinct from petty theft.

[7] *Depository*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/depository (last accessed Feb. 5, 2021) ("a place where something is placed or deposited especially for safekeeping").

Especially today, people expect that by ordering an article for delivery, they impliedly and by default *authorize* the mail carrier to *deposit* this mail on the recipient's porch, stoop, or doorstep, absent specific directions otherwise, even if this location happens to be some distance removed from the front door or mailbox. Though KRS 514.140 was passed in 1982, decades before the current explosion of the online-retail marketplace, parcels have not changed much since, nor has the custom of leaving larger ones on a recipient's doorstep, porch, or stoop to accomplish their delivery. In order to interpret the statute's language to give effect to its continued purpose, especially in a contemporary economic context, *authorized depository* can and should be taken to mean anywhere on or around a recipient's property where such a *deposit* is specifically directed via delivery instructions or any location where a delivery service would leave a package as a matter of habit or custom. This interpretation will tend to encompass, but is not limited to, porches, doorsteps, porch swings, and similar areas.

Therefore, notwithstanding the trial court's determination of adjacency, we hold that under the evidence as presented at trial, it would not be clearly unreasonable for a jury to find Davis guilty of theft of mail matter for stealing packages from an authorized depository, the front stoop of Stacey and Mike's home.

**B. The trial court did not err in denying Davis's request for a jury instruction on theft by unlawful taking under $500 as a lesser offense of theft of mail matter.**

Davis next argues that the trial court erred in denying his request for a jury instruction on theft by unlawful taking under $500[8] as a lesser offense of theft of mail matter. Ordinarily, we review the trial court's refusal to give a specific jury instruction for an abuse of discretion. *Sargent v. Schaffer*, 467 S.W.3d 198, 204 (Ky. 2015). However, because the trial court's decision on this issue was not based on its assessment of the facts but rather its assessment of the law, we review the trial court's denial of the requested jury instruction in this case de novo. *Conyers v. Commonwealth*, 530 S.W.3d 413, 424 (Ky. 2017) (citing *Sargent*, 467 S.W.3d at 204).

KRS 505.020(2)(a) provides that "[a] defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when: (a) [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." In *Hall v. Commonwealth*, this Court rejected a "*Blockburger*-type strict statutory elements approach" to determine "which offenses a trial court may properly instruct the jury on as lesser-included offenses of charged offenses." 337 S.W.3d 595, 607 (Ky. 2011) (referring to *Blockburger v. United States,* 284 U.S. 299 (1932)). Instead, we retained a fact-based approach that allows for "instructions on uncharged offenses where the facts alleged in the indictment or the evidence presented at trial supported such instructions." *Id.* at 606.

---

[8] KRS 514.030.

However, even under the fact-based approach espoused in *Hall*, Davis is not entitled to an instruction on theft by unlawful taking.

In *Hall*, the defendant was indicted on the charge of attempted murder along with other charges. *Id.* at 599. Over defense objection, the trial court instructed the jury on assault in the first degree as a lesser-included offense of attempted murder. *Id.* at 603. We found no error in the trial court's instructing the jury on assault in the first degree. *Id.* at 608. We reaffirmed our prior holding in *Perry v. Commonwealth*, 839 S.W.2d 268 (Ky. 1992), that "first-degree assault *can be* a lesser-included offense of attempted murder depending upon the facts of a particular case." *Id.* Regarding the facts presented in *Hall*, we concluded that "[t]he additional elements required by first-degree assault over attempted murder … (serious physical injury and use of a gun or dangerous instrument) were not really at issue. Instead, the pivotal issue here was whether there was intent to kill or merely injure [the victim]." *Id.* at 609. Therefore, we held that an instruction on assault in the first degree as a lesser-included offense of attempted murder was appropriate. *Id.*

In reviewing our case law on this issue, it is notable that the only cases in which the alternate theory lesser-included offense instruction was warranted have been cases in which the defendant was indicted on attempted murder or manslaughter and the lesser-included offense instruction required was one for assault. No other cases have been cited to this Court which have required an alternate theory lesser-included offense instruction for any other charges.

9

The matter before us is more akin to *Hudson v. Commonwealth*, 202 S.W.3d 17 (Ky. 2006), than to *Hall* or *Perry*. In *Hudson*, the defendant was charged with, and convicted of, operating a motor vehicle while under the influence of alcohol ("DUI"), fourth offense. *Id.* at 18. Hudson argued on appeal to this Court that the trial court erred in failing to instruct the jury on alcohol intoxication as a lesser-included offense of DUI. *Id.* His defense was that someone else was operating the car and that he was only guilty of being intoxicated in public. *Id.* at 19. We held that the trial court did not err, as neither offense was a lesser-included offense of the other. *Id.* at 20. We further held that "[a]n instruction on a separate, uncharged, but 'lesser' crime—in other words, an alternative theory of the crime—is required only when a guilty verdict as to the alternative crime would amount to a defense to the charged crime, *i.e.*, when being guilty of both crimes is mutually exclusive." *Id.* at 22. We explained that "[t]o do otherwise would allow a criminal appellant to seek reversal of his conviction simply because the trial court failed to instruct as to all the criminal acts he may have committed, regardless of whether the other uncharged crimes have any bearing on guilt as to the charged crimes." *Id.* The parallels between *Hudson* and the case before us are compelling.

Although *Hall* came after *Hudson*, we reaffirmed the appropriate lesser-included offense analysis from *Hudson* in *Conyers v. Commonwealth*. 530 S.W.3d 413. In *Conyers*, we were faced with the question of whether receiving stolen property was a lesser-included offense of burglary and answered that question in the negative. *Id.* at 424. We noted "the seemingly obvious tension"

10

between *Hall* and KRS 505.020. *Id.* at 425. We then declined "to explicate the possible relationship between *Hall* and *Hudson.*" *Id.* Importantly, we noted that "none of the double jeopardy provisions of KRS 505.020[] precluded convicting the defendants of receiving stolen property as well as burglary."[9] *Id.* This made *Conyers* more analogous to *Hudson* than to *Hall* because in *Hall,* "conviction of both assault and attempted murder would run afoul of KRS 505.020(1)(b), which prohibits conviction of more than one offense when the separate offenses require inconsistent findings of fact." *Id.*

Under the facts before us today, Davis could be found guilty of both theft of mail matter and theft by unlawful taking under $500. Theft of mail matter requires the Commonwealth to prove the defendant: (1) stole, by fraud or deception obtained, embezzled, concealed, damaged, or destroyed; (2) mail matter belonging to another person; (3) from any letterbox, mail receptacle, or other authorized depository for mail matter, or from a letter carrier, postal vehicle, or private mail box or which has been left for collection or delivery adjacent thereto by the United States Postal Service; (4) with the intent to deprive the owner thereof. KRS 514.140(1). Theft by unlawful taking under $500, on the other hand, requires the Commonwealth to prove the defendant:

---

[9] KRS 505.020(1) prohibits conviction of more than one offense when:

(a) One offense is included in the other, as defined in subsection (2); or

(b) Inconsistent findings of fact are required to establish the commission of the offenses; or

(c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

11

(1) took or exercised control over; (2) movable property belonging to another; (3) with the intent to deprive the owner thereof. KRS 514.030(1)(a).

Double jeopardy would not prohibit conviction of both offenses. Theft of mail matter requires that the item stolen be mail matter, although it need not have value, and requires that the item be taken from a place where mail is typically kept. Theft by unlawful taking, on the other hand, does not require that the item be stolen from any particular location but does require that the item stolen have some value. *See* KRS 514.010(6) (defining "property" as "anything of value"). Each offense includes an element the other does not, and therefore, a defendant could be convicted of both offenses without a violation of double jeopardy.

Further, the jury would not be required to make inconsistent factual findings in order to find Davis guilty of both theft of mail matter and theft by unlawful taking. Being guilty of both crimes is not mutually exclusive. *See Hudson*, 202 S.W.3d at 22. As such, this case is more akin to both *Hudson* and *Conyers* than *Hall* and *Perry*, and therefore, Davis was not entitled to an instruction on theft by unlawful taking as a lesser offense of theft of mail matter. The trial court did not err in denying his request for that instruction.

### C. The trial court did not err in denying Davis's *Batson* challenge to the Commonwealth's strike of Juror #4070.

Davis next argues that the trial court erred in denying his *Batson* challenge to the Commonwealth's use of a peremptory strike on Juror #4070, an African-American. "A trial court's ruling on a *Batson* challenge will not be

12

disturbed unless clearly erroneous." *Washington v. Commonwealth,* 34 S.W.3d 376, 380 (Ky. 2000).

After both sides exercised their peremptory strikes, Davis argued to the trial court that the Commonwealth violated *Batson v. Kentucky,* 476 U.S.79, in its use of strikes on two particular jurors. Only one of those strikes is before us today, the strike used on Juror #4070. To the trial court, Davis objected to the use of the strike, and the trial court immediately required the Commonwealth to provide a race-neutral reason for its use of a peremptory strike on Juror #4070. The Commonwealth's Attorney responded by saying, "I struck that juror because, I didn't realize that was an African-American juror. I apologize. I struck that juror because of her age. She is the youngest juror by far, eighteen. That is our race-neutral reason." Davis then argued that eighteen-year-olds are entitled to serve on juries and referenced the equal protection clause. The Commonwealth then expanded on its race-neutral reason by saying, "The thought being, she just doesn't have the life experiences that other jurors have at that point, perhaps is more forgiving." Both parties and the trial court then acknowledged that Juror #4070 had not answered any questions during voir dire. The trial court then made its ruling that the Commonwealth had provided a sufficient race-neutral reason for its strike.

In *Batson,* the United States Supreme Court held that deliberate racial discrimination during jury selection violates the Equal Protection Clause of the United States Constitution. *Id. Batson* established a three-part test to determine whether the prosecution has removed potential jurors solely on the

13

basis of race. First, the defendant must make a *prima facie* showing of purposeful discrimination. *Id.* at 96–97. In this case, the first step is not disputed.

The second step requires the prosecutor to provide a race-neutral reason for the strike. *Id.* at 97. "The explanation given during the second step need not be persuasive, or even plausible, nor does it need to rise to the level of a challenge for cause. It must simply be facially valid." *Harris v. Commonwealth*, 134 S.W.3d 603, 611 (Ky. 2004). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) (citing *Hernandez v. New York*, 500 U.S. 352, 374 (1991)). Here, the Commonwealth offered a facially valid reason for its use of a peremptory strike on Juror #4070; thus, this aspect of the test was satisfied.

The third step requires the trial judge to determine whether the defendant has shown purposeful discrimination. *Batson*, 476 U.S. at 98. "During this step, the trial judge must evaluate the reasons offered by the prosecutor to determine if they are valid and neutral and not simply a pretext for discrimination." *Harris*, 134 S.W.3d at 611-12 (citation omitted). However, "the ultimate burden of showing unlawful discrimination rests with the challenger." *Rodgers v. Commonwealth*, 285 S.W.3d 740, 758 (Ky. 2009). Because the trial judge is in the best position to evaluate the credibility and demeanor of the prosecutor, her decision is accorded great deference on this issue. *Harris*, 134 S.W.3d at 612 (citing *Hernandez*, 500 U.S. at 365).

14

We have previously acknowledged that age may be a valid race-neutral reason to strike a juror. *Johnson v. Commonwealth*, 450 S.W.3d 696, 703 (Ky. 2014). A vague invocation of the juror's age standing alone, however, is insufficient. *Id.* In *Johnson v. Commonwealth*, we held that simply stating "age" was an invalid rationale for a strike, without something more. *Id.* In *Johnson*, the Commonwealth did not articulate what it was about the age of the juror that concerned it. *Id.* "No clue was provided to indicate how old [the juror] was and how her age was influencing the prosecutor's preference to have her removed from the jury. Was she too old or too young? Were other jurors of her age stricken?" *Id.*

In this case, the Commonwealth provided clear and specific reasons for why age was relevant to Juror #4070's ability to serve on the jury. The Commonwealth identified the juror's age – eighteen years old – and stated that she was the youngest juror by far. The Commonwealth expressed concern that because of her young age, Juror #4070 may not have the life experience of other jurors and may be more forgiving. These reasons satisfy the concerns we laid out in *Johnson* about using age as a valid race-neutral reason to strike a juror. Accordingly, we see no clear error in the trial court's denial of Davis's *Batson* challenge to the strike of Juror #4070.

We note, however, that Juror #4070 did not answer any questions during voir dire. There is nothing in the record to support the Commonwealth's mere hunch that Juror #4070 has less life experience and will be more forgiving than other potential jurors. We also note that eighteen-year-olds are permitted to

15

serve on juries. Although, here, sufficient reasons were proffered for the strike of Juror #4070, we question how any young adult will be able to serve on a jury if Commonwealth's Attorneys believe people of this age have little life experience or will be too forgiving without any evidence of such.

**D. Any error in the admission of victim impact testimony during the guilt phase of Davis's trial did not amount to reversible error.**

Davis next argues that the trial court erred in admitting certain victim impact testimony during the guilt phase of his trial. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Little v. Commonwealth*, 272 S.W.3d 180, 187 (Ky. 2008). A court abuses its discretion if its decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Clark v. Commonwealth,* 223 S.W.3d 90, 95 (Ky. 2007).

Davis argues that three pieces of victim impact testimony were erroneously admitted during the guilt phase of his trial. First, he argues that the trial court erred in allowing evidence that Stacey and Mike were providing financial assistance to three of their children who were in college. No contemporaneous objection was made to the admission of this evidence, so error, if any, in the admission of it will only necessitate reversal if it rises to the level of palpable error under Kentucky Rule of Criminal Procedure (RCr) 10.26.[10] Second, Davis argues that the trial court erred in admitting evidence

---

[10] "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr 10.26.

16

that the contents of the stolen packages were intended to be graduation presents for Stacey's students whom she taught in a medical coding class. No contemporaneous objection was made to the admission of this evidence, and thus, error in its admission, if any, will only require reversal if it amounts to palpable error. Third, Davis argues that the trial court erred in admitting evidence that Stacey was unable to attend her students' graduation ceremony on the night of the theft because of the time it took to file the police report. Davis did make a contemporaneous objection to the admission of this evidence, so any error in its admission will necessitate reversal if that error is not harmless. *See* RCr 9.24.

Davis argues that the above-described evidence was not relevant to determining his guilt and was only elicited to arouse sympathy for Stacey and Mike. Under Kentucky Rule of Evidence (KRE) 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under KRE 402, "[a]ll relevant evidence is admissible" unless otherwise excluded by the law or our rules of evidence. "Evidence which is not relevant is not admissible." KRE 401. However, under KRE 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Unduly prejudicial evidence has been defined as evidence that "appeals to the jury's sympathies, arouses its sense of

horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Richmond v. Commonwealth,* 534 S.W.3d 228, 232 (Ky. 2017) (quoting *Butler v. Commonwealth,* 367 S.W.3d 609, 615 (Ky. App. 2012)) (internal quotation marks omitted).

Davis argues that admission of evidence that Stacey and Mike provide financial support to their three college-aged children was error. This evidence was not relevant to the determination of the case, as it did not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* KRE 401. Although a degree of background information regarding witnesses and victims is permitted in certain circumstances, evidence regarding the victims' personal financial circumstances is not relevant in determining Davis's guilt in taking the packages. As such, admission of this evidence was error. However, this error does not rise to the level of palpable error.

To determine if an error is palpable, "an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different." *Commonwealth v. McIntosh,* 646 S.W.2d 43, 45 (Ky. 1983). To be palpable, an error must be "easily perceptible, plain, obvious and readily noticeable." *Burns v. Level,* 957 S.W.2d 218, 222 (Ky. 1997) (citing *Black's Law Dictionary* (6th ed. 1995)). A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings. *Ernst v. Commonwealth,* 160 S.W.3d 744, 758 (Ky. 2005). "It should be so egregious

18

that it jumps off the page ... and cries out for relief." *Chavies v. Commonwealth,* 374 S.W.3d 313, 323 (Ky. 2012) (quoting *Alford v. Commonwealth,* 338 S.W.3d 240, 251 (Ky. 2011) (Cunningham, J., concurring)). Given the strength of the evidence against Davis, there is no substantial possibility that the result of the trial would have been any different if the evidence had been excluded. Further, this error did not seriously affect the fairness of the proceedings.

Davis also argues that the trial court erred in admitting evidence that the stolen packages contained medical coding books purchased as graduation presents for the students in Stacey's class. Although this evidence did not make it more or less likely that Davis committed theft of mail matter, the evidence was necessary for the jury to understand the context of the crime. Evidence was presented regarding Stacey and Mike's search for the items and Davis's disposal of them. Medical coding books would have little value to anyone who was not a medical coder, and this may explain why the items were not found in Davis's possession. Similarly, the small size of the books may help to explain why they were never located. Evidence that the books were purchased as gifts for a graduation ceremony that took place on the night of the incident also helps to explain why Stacey was tracking the delivery of the packages so closely. Much of this evidence would have made little sense to the jury without some testimony of the contents of the packages. Additionally, although the Commonwealth was not required to prove the value of the stolen objects for the theft of mail matter charge, Davis's trial strategy was to seek a lesser offense instruction for theft by unlawful taking under $500, which would

19

have required some testimony of the items stolen and their value. The trial court did not abuse its discretion in admitting evidence that the stolen packages contained medical coding books purchased as graduation presents for the students in Stacey's class.

Finally, Davis argues that the trial court erred in admitting evidence that Stacey was unable to attend her students' graduation ceremony on the night of the theft because of the time it took to file the police report. While the circumstances and progression of the police investigation is, of course, relevant, this particular evidence contains little relevant information. It may be presumed that theft results in hardship to its victims. The specific details of that hardship in this case bear little weight on the issues the jury was tasked with determining. As such, its admission was in error. Because Davis made a contemporaneous objection to the admission of this evidence, we must now determine whether the error was harmless.

Evidentiary errors are harmless "if we can say with fair assurance that the judgment was not substantially swayed by the error." *Ordway v. Commonwealth,* 391 S.W.3d 762, 774 (Ky. 2013) (quoting *Brown v. Commonwealth,* 313 S.W.3d 577, 595 (Ky. 2010)). "Our inquiry is not simply 'whether there [is] enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Brown,* 313 S.W.3d at 595 (quoting *Kotteakos v. United States,* 328 U.S. 750, 765 (1946)).

20

In this case, there was compelling evidence that Davis stole the packages from the front steps of Stacey and Mike's home, including an admission from Davis himself. The evidence that Stacey missed her students' graduation ceremony would have had little impact on the jury's determination of guilt. We find it difficult to believe this error could have had any substantial influence on the jury's determination, and we can say with fair assurance that the judgment was not substantially swayed by this error. *See id.*; *Ordway*, 391 S.W.3d at 774. Accordingly, error in the admission of this evidence was harmless.

**E. The clerical error in Davis's judgment does not rise to the level of palpable error.**

Davis's final argument is that the trial court's judgment contained a clerical error regarding restitution that this Court should correct. Specifically, at Davis's sentencing hearing, the trial court instructed, "Sir, when you get out, I want you to pay [restitution] back at the rate of $50.00 a month." The trial court's final judgment, however, simply ordered Davis to pay restitution "in the amount of $148.47 in monthly payments of $50.00."

Davis argues that the judgment contains a clerical error because it does not include language specifying that restitution is not required to be paid until Davis is released from incarceration. Clerical errors, as opposed to judicial errors, are "all errors, mistakes, or omissions which are not the result of the exercise of the judicial function." *Buchanan v. West Ky. Coal Co.,* 218 Ky. 259, 291 S.W. 32, 35 (1927). The distinction between judicial and clerical errors "does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless

21

of whether it was made by the clerk, by counsel, or by the judge." *Id.* (citation omitted). "The failure to accurately reduce to writing the trial court's intended sentence, a sentence which was evident from a review of the videotaped record and made known to both parties at the sentencing hearing, was a clerical error." *Machaniak v. Commonwealth,* 351 S.W.3d 648, 654 (Ky. 2011).

This issue was not raised before the trial court, and Davis requests palpable error review. The Commonwealth, on the other hand, argues that the appropriate method to request correction of this clerical error is a motion pursuant to Kentucky Rule of Civil Procedure (CR) 60.01[11] made to the trial court and that this error does not amount to palpable error.

We note that under RCr 10.10, clerical errors can be corrected by the trial court, with leave of the appellate court, even while the case is pending on appeal. We are not aware of any such effort made by Davis during the pendency of this appeal. In viewing the clerical error that was made and the failure to pursue correction of it even while this appeal has been pending, we cannot hold the error has resulted in manifest injustice to Davis. It simply does not meet the palpable error standard of RCr 10.26. Accordingly, we decline to grant Davis any relief from this error.

---

[11] Although the Commonwealth cites to the civil version of the rule, CR 60.01, the criminal version of the same rule is found in RCr 10.10, which states in full:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is perfected in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

### III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the Fayette Circuit Court in this matter.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Robert Lee Baldridge
Assistant Attorney General